CAROLINA-TENNESSEE POWER COMPANY v. HIAWASSEE RIVER
POWER COMPANY, W. H. REESE ET AL.

(Filed 3 October, 1923.)

**1. Appeal and Error—Evidence—Findings.**

Where, by agreement of the parties, the judge finds the facts in the case appealed from, his findings, supported by competent evidence, are conclusive.

**2. Same—Corporations—Condemnation.**

Where the statute chartering a public-service corporation gives it power of condemnation, and it appears on appeal, the judge finding the facts by consent, that the corporation was duly created, organized and existing thereunder, exceptions by the owner of lands that it had no such power, or corporate existence, for failing in certain respects to have been properly organized, are untenable. Nor is the defendant's position available that the plaintiff's laches had deprived it of this right, when the findings, supported by evidence, are to the contrary.

**3. Corporations—Condemnation—Constitutional Law.**

Under the facts of this appeal: *Held*, the defendant's position is untenable that the powers conferred upon the plaintiff, petitioner in condemnation of their lands, were special privileges, contrary to the Fourteenth Amendment to the Federal Constitution, under the authority of *Power Co. v. Power Co.*, 175 N. C., 668, and other like cases cited.

**4. Corporations—Condemnation—Measure of Damages.**

The measure of damages in proceedings of a public-service corporation to condemn lands for a public or *quasi*-public use is the fair market value of the lands, taking into consideration any and all uses or purposes to which the property is reasonably adapted, and might with reasonable probability, be applied.

CLARKSON, J., concurring.

ADAMS, J., not sitting, and taking no part in decision in this case.

APPEALS by defendants in twelve suits from *McElroy, J.*, at January Special Term, 1923, of CHEROKEE.

All of these causes, except No. 589, were condemnation proceedings, brought by the Carolina-Tennessee Power Company against the several defendants for the purpose of condemning and acquiring certain lands situate on the banks of the Hiawassee River in Cherokee County, to be used by petitioner in connection with a water-power development or hydro-electric system. No commissioners were appointed, as provided by C. S., 1720; but, by consent of all the parties, at the January Special Term, 1923, Cherokee Superior Court, said causes were transferred to the civil-issue docket, consolidated and tried together before his Honor, P. A. McElroy, sitting as judge and jury, it being agreed that he should hear the evidence, find the facts and render judgments accordingly.

It was admitted on the hearing that the Hiawassee River Power Company now owns all the lands sought to be condemned in these pro-

ceedings, except those involved in No. 596, known as the *Reese case,* said proceeding being against W. H. Reese and wife. The several causes, therefore, for all practical purposes, may be considered as one proceeding on behalf of the Carolina-Tennessee Power Company against the Hiawassee River Power Company to condemn lands claimed by it, and another proceeding against W. H. Reese and wife to condemn lands claimed by them.

No. 589 was a motion to dissolve the injunction issued in the case of *Carolina-Tennessee Power Company v. Hiawassee River Power Company,* decided by this Court in 1918 and reported in 175 N. C., 668. By consent, this motion was heard with the other causes above mentioned, and the motion was denied by the trial court.

In No. 595, the defendant, in addition to setting up the usual defenses, asked for affirmative relief against the petitioner in the shape of an injunction to restrain the petitioner from further interfering with the defendant in the development of its water-power or hydro-electric system. This application by the defendant, Hiawassee River Power Company, for injunctive relief was denied.

From a judgment in favor of the petitioner in each of the above-entitled causes the defendants appealed, assigning errors in each cause.

*Martin, Rollins & Wright for petitioner.*
*C. M. Seymour, Moody & Moody, J. Crawford Biggs, C. W. Tillett, Jr., and Tillett & Guthrie for defendants.*

STACY, J., after stating the facts as above: It required two weeks in the Superior Court to hear and to determine the matters herein litigated. The record on appeal to this Court is voluminous; it contains more than three hundred exceptions and assignments of error. After a careful and painstaking investigation of the whole matter, we have found no ruling or action on the part of the trial judge which we apprehend should be held for reversible error. In each cause, therefore, the judgment entered below must be affirmed.

The main contentions of the defendants are as follows:

1. That all these condemnation proceedings should be dismissed, the injunction in the original suit (No. 589) dissolved, and an injunction issued against the petitioner and in favor of the Hiawassee River Power Company in No. 595.

2. That the trial court erred in its findings with respect to the issue of damages in each cause which entitles the defendants, at least, to a new trial on this issue.

The defendants assign three principal reasons for their first position: (1) That the petitioner's right of condemnation has been lost by laches and its failure to prosecute these suits; (2) that the petitioner has never

acquired the right to condemn these lands because it has failed to show compliance with the conditions set forth in the fifteenth section of its charter, and because it has never had a legal board of directors; and (3) that the petitioner is not proceeding in good faith.

With respect to the defendants' first and third reasons, just stated, relating to the question of laches, or the statute of limitations, and good faith, it is sufficient to say that, upon competent and ample evidence, the trial court has resolved these matters in favor of the petitioner, as witness the following findings, made and incorporated in the judgment entered in each condemnation proceeding:

"8. That the petitioner's cause of action is not barred by the statute of limitations, and petitioner has not abandoned its right to make said developments, or its purpose and intention to make said developments, or any of them, and that none of the defenses set up in the pleadings of the defendants can be availed of by the defendants or either of them in this cause.

"9. That the petitioner has not been guilty of any laches in failing to develop said water-power described in the petition; that the prior rights of the Carolina-Tennessee Power Company to develop said water-powers still subsist and have not been forfeited or lost by the said petitioner, and the defendant, Hiawassee River Power Company, is not entitled to use said lands, or any part thereof, for water-power purposes."

These findings, made by his Honor below, clearly distinguish the present causes from the cases relied upon and interestingly discussed by the defendants in their elaborate brief. To point out the many differences between the authorities cited and the instant causes would only be a work of supererogation. The alpha and omega of every case must be determined by the facts of record. However, for the benefit of the student or the investigator, an examination of the following authorities, chiefly relied upon by the defendants, may be of interest: *Stith v. Jones,* 119 N. C., 428; *Manning v. R. R.,* 122 N. C., 824; *R. R. v. R. R.,* 148 N. C., 59; *Bensley v. Mountain Lake Water Co.,* 13 Cal., 306; 73 Am. Dec., 579; *Rehmke v. Fogarty,* 107 Pac., 184; *Hagerman v. Bates,* 38 Pac. (Colo.), 1100; *Streicher v. Murray,* 92 Pac. (Mont.), 36; *Sanitary District of Chicago v. Chapin,* 80 N. E. (Ill.), 1017; *N. Y. Cable Co. v. N. Y.,* 10 N. E., 332; *Johnston v. Standard Milling Co.,* 148 U. S., 360; 37 L. Ed., 480.

As between the Carolina-Tennessee Power Company and the Hiawassee River Power Company, the right, as well as the prior right, of the petitioner to condemn the lands in dispute and to acquire them for use in its hydro-electric or water-power development must be considered as settled by our former decisions, at least so far as the present records are

concerned. *Carolina-Tenn. Power Co. v. Hiawassee R. P. Co.,* 175
N. C., 668; *S. c.,* 171 N. C., 248. Defendants contend, however, as to
the suit against W. H. Reese and wife, No. 596, that this would not be
so, as they were not parties to the original proceeding. But in the
*Reese case* it is specifically admitted by the defendants "that the peti-
tioner is a North Carolina corporation and under the supervision of the
Corporation Commission of North Carolina"; and his Honor finds as a
fact from the evidence in this cause: "That the petitioner, Carolina-
Tennessee Power Company is a corporation, duly created, organized
and existing under and by virtue of the laws of the State of North
Carolina, having the powers, privileges and duties set out in its charter,
to wit, chapter 76 of the Private Laws of 1909, and having its principal
place of business in the town of Murphy, N. C."

It is further contended by the defendants in the *Reese case,* as well
as in the others, that the Legislature has granted special privileges and
special charter rights to the petitioner in its act of incorporation, which
are in violation of the Fourteenth Amendment to the Constitution of
the United States. For this reason the defendants insist upon their
motion to dismiss, or for judgments as of nonsuit. The motions based
upon this ground must be overruled on authority of *Power Co. v. Power
Co.,* 175 N. C., 668; *Land Co. v. Traction Co.,* 162 N. C., 314; *Street
R. R. v. R. R.,* 142 N. C., 423.

But the defendants' most vigorous attack is made upon the second
ground above mentioned, to wit, that the petitioner has never acquired
the power of eminent domain because it has failed to show compliance
with the following conditions as set forth in the fifteenth section of its
charter:

"Whenever one hundred shares shall have been subscribed, the sub-
scribers, under the direction of the majority of the incorporators herein
named, who themselves shall be subscribers, may organize the said com-
pany by electing a board of directors, and provide for the election of
such other officers and the adoption of such by-laws as may be neces-
sary for the management of the business and affairs of the said com-
pany, and thereupon they shall have and exercise all powers and func-
tions of a corporation under this charter and the laws of this State."

The defendants, in their brief, admit the *bona fide, de jure* existence
of the petitioner as a corporation, but they contend that, under the
above provision, three specific requirements must be met before it can
exercise the right of condemnation: (1) That each incorporator must
be a subscriber for stock; (2) that a minimum of 100 shares of stock
shall have been subscribed; (3) that a board of directors shall have been
elected. For this position the defendants rely upon the following
authorities: *R. R. v. Stroud,* 132 N. C., 413; *R. R. v. R. R.,* 148 N. C.,

59; *Merges v. Altenbrand,* 123 Pac. (Mont.), 21; *N. Y. Cable Co. v. New York,* 10 N. E., 332; *Warden v. Madisonville etc. R. R. Co.,* 101 S. W. (Ky.), 914; *Parkside Cemetery Assn. v. Cleveland etc. Traction Co.,* 112 N. E. (Ohio), 596, and others.

Passing the question of the right of the defendants to make this attack in the present proceedings, we think it is sufficient to say that in each cause the following specific finding is made by the trial court:

"That the petitioner, Carolina-Tennessee Power Company, is a corporation, duly created, organized and existing under and by virtue of the laws of the State of North Carolina, having its principal place of business in the town of Murphy in said State, and having the authority, power and duties set out in its charter, to wit, chapter 76, Private Laws of 1909."

Petitioner, however, in order to repel this attack as a matter of law, cites and relies upon the following authorities: *R. R. v. Lumber Co.,* 114 N. C., 690; *Street Ry. Co. v. R. R.,* 142 N. C., 423; *Kansas City etc. Ry. Co. v. Coal & Min. Co.,* 61 S. W. (Mo.), 684; Lewis on Eminent Domain, sec. 592; Nichols on Eminent Domain, sec. 411; 2 Cook on Corporations (7th Ed.), sec. 637; 20 C. J., 913.

The defendants' last position is that, in any event, they are entitled to a new trial in each cause for errors committed on the issue of damages. We have carefully examined the numerous exceptions taken and entered on this branch in the different proceedings, but nothing has been discovered by us which we think should be held for reversible error. No benefit would be derived from a discussion of these exceptions *seriatim,* as they deal largely with questions of fact, and apparently no new or novel point of law is presented for decision by any of them.

It is the accepted position here and elsewhere that in condemnation proceedings, where property is taken for a public use, or a *quasi*-public use, under the power of eminent domain, the measure of compensation to be awarded the owner is the fair market value, taking into consideration any and all uses or purposes to which the property is reasonably adapted and might, with reasonable probability, be applied. The test is the fair market value of the property. 10 R. C. L., 128; Nichols on Eminent Domain (2d Ed.), sec. 445; *Brown v. Power Co.,* 140 N. C., 333; *R. R. v. McLean,* 158 N. C., 498; *Land Co. v. Traction Co.,* 162 N. C., 503.

In *Boom Co. v. Patterson,* 98 U. S., 403, the rule is very clearly stated by *Mr. Justice Field,* as follows: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the mar-

ket, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he. is unable to put it to any use. Other's may be able to use it and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated."

.To like effect are the decisions of this Court in *R. R. v. Mfg. Co.,* 169 N. C., 156; *R. R. v. Armfield,* 167 N. C., 464; *Teeter v. Telegraph Co.,* 172 N. C., 784.

The above standard of award, as we understand the record, was adopted by his Honor in arriving at the different values placed upon the several properties. In this there was no error.

The judgment in favor of the petitioner in each of the above causes will be upheld.

Affirmed.

CLARKSON, J., concurring: In the present case I have read the voluminous record, heard the able arguments of the defendants' counsel, and read their carefully prepared brief, but am unable. to see any reversible error. The case was first in this Court at Spring Term, 1916 (*Carolina-Tennessee Power Co. v. Hiawassee River Power Co.,* 171 N. C., 248), on an appeal from *Cline, J.,* at March-April Term, 1915, of Cherokee Superior Court. At that term the following issues were submitted to the jury:

"1. Did the plaintiff, prior·to 21 August, 1914, survey, stake out, and adopt the locations for its dams, reservoirs, and public works on the Hiawassee River, as alleged in the complaint and as indicated on the map offered in evidence? Answer: 'Yes.'

"2. If so, were the plaintiffs' said locations lying, on 21 August, 1914, in a state of abandonment? Answer: 'No; they did not.' "

The court below *ex mero motu* found additional facts, and granted an injunction substantially as requested in the prayer of the complaint. From this judgment the defendant appealed to this Court and was granted a new trial. A learned opinion was written by *Walker, J.,* deciding all the main contentions for the plaintiff, but gave a new trial for certain important issues of fact to be decided by a jury for a proper determination of the case. The cause again came on for hearing at March Term, 1917, of Cherokee County, before *W. J. Adams, J.,* now a member of this Court. The issues submitted to the jury, and their answers, are as follows:

"1. Were the locations for the dams, reservoirs, and public works claimed by the plaintiff surveyed and staked out on the Hiawassee River in the year 1909, as alleged in the complaint and as indicated on the maps offered in evidence by plaintiff, marked 'Exhibit 7 and 7-A'? Answer: 'Yes' (by consent).

"2. If so, did the plaintiff, in the year 1909 and thereafter, but before the organization of the defendant company in July, 1914, adopt said locations by authoritative corporate action, as alleged in the complaint? Answer: 'Yes.'

"3. Did the plaintiff, prior to the commencement of this action on 21 August, 1914, abandon its said locations and proposed plans, as alleged in the answer? Answer: 'No.'

"4. Did the plaintiff file the maps or plats of its said locations in the office of the clerk of the Superior Court of Cherokee County on or about 21 June, 1911, as alleged in the complaint? Answer: 'Yes.'

"5. Did the plaintiff, on or about 17 August, 1914, by authoritative corporate action, adopt the surveys and locations for its dams, reservoirs, and public works which had theretofore been made and marked out on the Hiawassee River, as alleged in the complaint? Answer: 'Yes' (by consent).

"6. Were the locations for the dams, reservoirs, and public works claimed by the defendant surveyed and staked out on the Hiawassee River, as alleged in the answer? Answer: 'Yes' (by consent).

"7. If so, did the defendant thereafter, by authoritative corporate action, adopt said location; and if so, when? Answer: 'No.' "

Upon the findings of the jury there was a judgment in favor of the plaintiff, and defendant appealed to this Court.

The judgment of the court below was affirmed in an opinion, comprising fifteen pages, covering every phase of the case, with numerous citations, not only from this Court, the United States Court, and legal text-books, but decisions from numerous States of the Union. The decision was exhaustive and learned, covering all the main contentions— remarkable for its clearness and logic, and is the leading case in this State on "water-powers." The decision of these cases gave the plaintiff priority of right in *locus in quo* as the first company that defined, marked its route and adopted the same by authoritative corporate action. *Power Co. v. Power Co.,* 175 N. C., 668.

Writ of error to Supreme Court of United States was allowed 17 August, 1918. On 22 March, 1920, the Supreme Court of the United States dismissed writ of error, "dismissed for want of jurisdiction."

From the opinion of *Walker, J.,* it would seem that the only question unsettled was the plaintiff's condemning the land of defendant and others to complete its hydro-electric enterprise. The present suits arise

out of the condemnation proceedings. These suits were carefully heard before *McElroy, J.,* a painstaking and conscientious judge, who, both sides agreed, could find the facts and make his conclusion of law. He has found them against the defendant and in favor of the plaintiff, on evidence submitted, and from these findings and conclusions of law the defendant has again appealed to this Court. The defendants' counsel, in the oral argument, so earnestly insisted that there was reversible error that the Court carried the case over during the vacation months under *advisari.* Knowing the great importance of the case, I have gone thoroughly into every phase of the exceptions, and can find no material or prejudicial error.

"Verdicts and judgments are not to be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right." *Wilson v. Suncrest Lumber Co., ante,* 56, and cases there cited.

CLARKSON, J., concurring.

ADAMS, J., not sitting, and taking no part in decision in this case.

· The decision in this case is determinative of the following cases on appeal, to wit:

589. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co.*

591. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

592. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

593. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

594. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

595. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co.*

596. *Carolina-Tennessee Power Co. v. W. H. Reese et ux.*

597. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.* ·

598. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

599. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*

600. *Carolina-Tennessee Power Co. v. Hiawassee River Power Co. et al.*